LUCIAN AUTREY, EMPLOYEE, v. VICTOR MICA COMPANY, EMPLOYER, AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, CARRIER.

(Filed 7 November, 1951.)

1. **Master and Servant § 43—Evidence held to sustain finding that claimant was first advised he had silicosis shortly before filing of claim.**

    Defendants contended that claimant was advised that he was suffering from silicosis some eight years prior to filing claim. The evidence tended to show that competent medical authority wrote to other doctors that claimant had some silicosis and that such authority advised claimant that he "might have silicosis" and that claimant filed a claim therefor with his former employer, which claim was dismissed, claimant being told that he did not have silicosis. Claimant testified that the first time he was informed that he had silicosis by competent medical authority was subsequent to the termination of his employment with defendant employer, and that he gave notice thereof to defendant a month later. *Held:* The evidence is sufficient to sustain the finding of the Industrial Commission

that claimant was first advised by competent medical authority that he had silicosis subsequent to the termination of his employment with defendant employer.

**2. Same—**

Where claimant is first advised that he had silicosis by competent medical authority some two and one-half years after he quit his employment because of disability, and he files claim for compensation with his employer a month after having been so advised, claimant's claim is filed in apt time. G.S. 97-58 (a), (b).

APPEAL by defendants from *Gwyn, J.,* at July Term, 1951, of MITCHELL.

Proceeding under the North Carolina Workmen's Compensation Act, Chapter 97 of General Statutes, for compensation, G.S. 97-57, for disablement from performing normal labor in the last occupation in which plaintiff was remuneratively employed, that is, by Victor Mica Company, G.S. 97-54, because of the occupational disease of silicosis. G.S. 97-53 (25).

The parties hereto stipulate, among other things, that plaintiff Lucian Autrey was, during the year 1945, an employee of Victor Mica Company at an average weekly wage of $35.00; that the company employed more than five people, and was subject to and bound by the Workmen's Compensation Act; that American Mutual Liability Insurance Company was compensation insurance carrier; that plaintiff filed his claim for compensation for disability from silicosis, and notified defendant employer by copy thereof, on 24 April, 1948; and that defendants deny that plaintiff has silicosis or any other lung disease resulting from his employment with defendant Victor Mica Company.

The proceeding was first heard by Chairman J. Frank Huskins, of North Carolina Industrial Commission at Spruce Pine, N. C., on 23 August, 1948, upon testimony of plaintiff, and Dr. C. D. Thomas, Medical Director of the Western North Carolina Sanatorium, admitted to be an "expert physician and surgeon in so far as t.b. is concerned," and Dr. E. H. Sloop, admitted to be an "expert physician and surgeon," and Dr. Otto J. Swisher, Director of Industrial Hygiene of the State of North Carolina, admitted to be an "expert physician and surgeon dealing with diseases of the chest and lungs," and upon certain records pertaining to examinations of plaintiff from files of the Western North Carolina Sanatorium and from files of Department of Industrial Hygiene of the State of North Carolina.

Plaintiff, Lucian Autrey, testified: That he is 39 years of age; that he was employed by Victor Mica Company in 1942, and last worked for them on 20 December, 1945, since which time he has been unemployed; that his job with this company for eighteen months was a truck driver

hauling mica from the plant in Yancey County,—loading cars; that he was exposed to dust, loading boxcars, and in the plant loading the truck; that for the remainder of the period '42 to '45 he fed the crusher and bagged on the inside of the plant,—the dust being a continual thing; that the nature of the illness that he contracted was shortness of breath; that he has not been able to work, nor has he worked any at all,—not even light work, for anybody since he was last employed by Victor Mica Company, because he hasn't had breath to work; and that he has been physically unable to do any work.

Plaintiff continued, saying that when he quit work in December, 1945, he went to several doctors, who treated him for asthma, and allergy to dust, and then in March, 1948, he had X-rays made by the Health Office; that that was when Dr. Thomas made report that he had silicosis; that this was the first time he had been informed that he had silicosis; that this was 24 March, 1948; that prior thereto he did not know, nor had he been advised by any doctor that he had silicosis; that he reported to Victor Mica Company in April, 1948, that he was suffering from silicosis; that since then his general physical condition has been worse; and that he is fifty-one pounds underweight,—doesn't sleep too good; and is unable to climb steps or to do any kind of work whatsoever.

Plaintiff also testified: That from 1935 to 1940 he worked for Tennessee Mineral Company in fine grinding department loading cars and bagging; that he was exposed to dust in that department,—just plenty of dust, foggy dust that surrounded his work, and that the effect on him was "just shorten your breath"; that before he worked for Tennessee Mineral he worked for Carolina Mineral Corporation six or seven or eight years, as a drill runner, mucker,—part of it open, and part of it was heading drill,—dry drilling all of it; and that it was pretty dusty—just a foggy dust, about all the time he worked.

The doctors were in disagreement as to whether or not plaintiff had silicosis. Dr. Thomas, basing his opinion on an examination made by him 6 May, 1948, gave it as his opinion in this manner: "X-ray of his chest shows on the right level of the first interspace small area of density which is suspicious of tuberculosis infiltration. There is a slight general accentuation of the trunks throughout both lungs, with very mild nodulation in their outline, probably due to very early silicosis . . . Whatever tubercular infection he has, in my opinion, is not a result of silicosis." And the doctor referring to X-ray films made in 1940 and 1942, said: "It was my opinion at that time that he did have a mild case of silicosis."

Dr. Thomas, on cross-examination, testified: (1) That the record of first examination of plaintiff by a doctor at the sanatorium is 13 June, 1940, following which Dr. S. M. Bittinger wrote letter 18 June, 1940, brief outline of which is: "We made X-ray pictures of Mr. Autrey's

chest and also obtained X-rays from the Division of Industrial Hygiene in Raleigh, which were made from 1936 to June 4, 1948 (patently 1938). These old films when compared with the present ones show, in my opinion, slight progression of the chronic lesion. In fact, I think there are present now definite nodulations which were not so evident in previous film, and I believe that Mr. Autrey has now definite evidence of pneumonokoniosis of the silicotic type, though I do not believe that it is very extensive as yet. I see no evidence of t.b."

(2) That on 30 October, 1940, in letter to Dr. J. T. McDuffie of Spruce Pine, N. C., Dr. S. M. Bittinger wrote: "Your patient, Mr. Lucian Autrey of Spruce Pine, was re-examined in the Sanatorium October 30, 1940. As you will remember, when Mr. Autrey was examined here 6-13-40, we found that he did not have any tuberculosis, though he did have some chronic lung fibrosis or bronchitis, the former we thought due to the changes from silicosis and we advised at that time that Mr. Autrey change his occupation and get some light work. Since his examination here, Mr. Autrey tells us that his condition has been just about the same. He still has a good deal of cough and expectoration, the latter with a streak of blood occasionally, and he also complained especially of dyspnea. His examination today and fluoroscopic study when compared with previous findings show practically no change has occurred in the lung pathology. Thus, we still believe that Mr. Autrey has no tuberculosis, and we also believe that he has some silicosis with quite a good deal of chronic bronchitis and a slight amount of pneumonosis. We advise that Mr. Autrey find some light work such as around a filling station or a job as a night watchman. I told him to talk the matter over with his former employers and see if they could not find some work of this nature for him to take up. I also told him I felt sure you would be glad to help him out in locating some such type of work. I also told Mr. Autrey he should be re-examined here in something like 5 or 6 months."

(3) That subsequent to October, 1940, the date of examination made by Western North Carolina Sanatorium is a chart of examination on 3-3-41, but there is no written report on it, and the doctor says, "I do not have any record of an examination made between 1940 and 1948."

Dr. Thomas also testified that subsequent to the examination, October, 1940, the next medical record he has on Mr. Autrey is a letter dated 29 November, 1940, addressed to the North Carolina Industrial Commission, in the case of *Lucian Autrey v. Tennessee Mineral Products,* following examination made in office of Dr. McDuffie at Spruce Pine, on 15 November, 1940, signed by Dr. H. F. Easom, member of Advisory Medical Committee, on the last page of which he says, "I do not think this is a case of silicosis."

And Lucian Autrey, plaintiff, being recalled, testified, "Speaking of the letter of November 29, 1940, that was at the time that I had the case pending against the Tennessee Mineral Products Company. I was told at that time that I did not have silicosis. Dr. Vestal told me that. I was not given a work card to go back to work until August '42. When I was given that work card, I went to work for Victor Mica Company. From then until December 1945 I was never refused one."

Then plaintiff, under cross-examination, continued: "I made a claim against the Tennessee Mineral Company in 1940. Dr. Bittinger, he said I might have some silicosis and he wanted me out of the plant. I made the claim against Tennessee Mineral Company because he said that I had some silicosis and I was not able to work in the plant . . . I didn't get to where I wasn't able to work for Tennessee Mineral Co. . . . I made a claim against them because they laid me off, wouldn't give me work, and I were making claim against them for silicosis at that time. I was a little bit short of breath at that time—not bad . . . I regained my breath in 1942. I didn't work any for two years—had no trouble at all in 1942. Breathed as good as I ever could . . . I didn't exactly know in 1942 when I went to work for Victor Mica Company what silicosis was. I had not been told by Dr. Bittinger that . . . a man that was short of breath might have silicosis . . . He said I might have silicosis . . . There was no trial to it. They just throwed it out . . . He told me I might have some symptoms of silicosis and he said he thought I should come out of the plant and work on the outside . . ."

Dr. Sloop, basing his opinion on his own examination, in his testimony stated that "it is my opinion then that he does have silicosis."

Dr. Otto J. Swisher, basing his opinion on X-ray films of examinations in his department, (1) 28 August, 1936, by Dr. Plyler, (2) 6 November, 1937, by Dr. Easom, (3) 4 June, 1938, by Dr. Vestal, (4) 28 July, 1942, by Dr. Vestal, and (5) 28 July, 1948, by himself, testified that the diagnosis of each was "essentially negative" to silicosis; that on 3 August, 1942, Autrey was given a work card; that he was approved for a work card 28 July, 1948; and that "in the five examinations we have made of Mr. Autrey we found no evidence of silicosis . . . that this man is not disabled by reason of anything pertaining to silicosis . . . This man is disabled, but his disability is in no way related to silicosis."

Thereupon, on 14 October, 1949, the hearing commissioner entered an order, in which after reviewing the differences in opinions expressed by the doctors, reserved decision and award of the Industrial Commission, until it shall have received a report from the Advisory Medical Committee, and then referred the case to the committee under "mandatory" provisions of G.S. 97-68,—directing the attention of the committee to the provisions of G.S. 97-69, G.S. 97-70 and G.S. 97-71 for strict com-

pliance and to "set forth its opinion regarding all medical questions involved in this case, and particularly the following:

"(1) Does the plaintiff have an occupational disease, to wit, silicosis?

"(2) If so, is the plaintiff actually incapacitated because of such occupational disease from performing normal labor in the last occupation in which remuneratively employed; that is, driving a truck and loading and unloading burlap bags filled with ground mica?

"(3) If the plaintiff has silicosis, has such disease progressed to such degree as to make it hazardous for him to continue employment in a dusty trade?"

The record shows that in a letter dated 27 December, 1949, to the Chairman of the North Carolina Industrial Commission, Dr. Swisher, Director of Division of Industrial Hygiene, reported that the full Advisory Medical Committee, naming them, met at the Division of Industrial Hygiene on 15 December, 1949, for a conference regarding plaintiff; that the committee had very thoroughly reviewed the case reports and medical findings, along with all X-rays from the first examination of 28 August, 1936, through that of 28 July, 1948, and has arrived at a final diagnosis; and that the answer to question #1 is "No"; and that the committee states that plaintiff does not have an occupational disease, to wit, silicosis.

However, the record also shows in letter dated 25 July, 1950, to North Carolina Industrial Commission, signed by all three members of Advisory Medical Committee, it is reported that at the request of the Commission the committee met at Spruce Pine, N. C. (Drs. Thomas and Swisher, Dr. Phillips, and one of plaintiff's attorneys being present) and examined plaintiff on 14 March, 1950, and is of opinion, "after studying the case as a whole, that the patient has moderately advanced silicosis, mild emphysema, chronic bronchitis, and lymphadenitis (etiology undetermined), and believes that he does have disability resulting from silicosis in the second stage."

Thereafter, Dr. Vestal appeared for the committee for examination and cross-examination, and testified, concluding, in pertinent part with this statement: "Our final finding, though, was that he had silicosis in the second degree, moderately advanced silicosis."

Thereafter on 19 September, 1950, Chairman J. Frank Huskins, as hearing commissioner, after reviewing the evidence and proceedings had, made findings of fact, in addition to those covered by stipulation of parties as herein first above stated, in pertinent part as follows:

"2. That from 1942 to 20 December, 1945, the plaintiff was regularly employed by defendant employer at an average weekly wage of $35.00. That plaintiff was exposed to silica dust in North Carolina for a period of two years or longer within the 10 years immediately preceding 20 De-

cember, 1945, within the meaning of G.S. 97-63; and was exposed to the hazards of silicosis while working for the defendant employer for as much as 30 working days, or parts thereof, within the 7 consecutive calendar months immediately preceding the last day of exposure on 20 December, 1945.

"3. That the plaintiff is now suffering from silicosis in its second stage.

"4. That plaintiff worked for defendant employer from 1942 to 20 December, 1945, and has been unemployed since he quit work for defendant employer on that date; . . . that all this work was carried on in the State of North Carolina and constituted an injurious exposure within the meaning of G.S. 97-57; that from 1935 to 1940, plaintiff worked for Tennessee Mineral Corporation in the fine grinding department, loading and bagging, and was exposed to silica dust during that period; that prior to 1935, he worked for Carolina Mineral Company for 6 to 8 years as a mucker and drill runner, doing dry drilling, and was exposed to silica dust during that period; . . . that plaintiff's work for Victor Mica Company was performed under conditions constituting an injurious exposure to the hazards of silicosis, and that his last injurious exposure, as defined in G.S. 97-57, occurred on and immediately prior to 20 December, 1945, while plaintiff was employed by defendant employer and while defendant carrier was on the risk.

"5. That plaintiff is actually incapacitated because of silicosis from performing normal labor in the last occupation in which remuneratively employed, and is thus disabled within the meaning of G.S. 97-54; that such disablement occurred at the time of the plaintiff's last exposure on 20 December, 1945.

"6. That plaintiff was first advised by competent medical authority that he had silicosis on or about 24 March, 1948, when Dr. Thomas wrote a letter to that effect.

"7. That plaintiff filed his claim for compensation, and notified his employer by copy thereof, on 24 April, 1948.

"8. . . . that plaintiff is therefore not a fit subject to rehabilitation under the provisions of G.S. 97-61, and is actually incapacitated because of silicosis from performing normal labor in the last occupation in which remuneratively employed."

And "upon all the stipulations, competent evidence, and the foregoing findings of fact, the commission makes the following conclusions of law:

"The question as to whether or not the plaintiff is suffering from silicosis is essentially a question of fact. It has been surrounded with much doubt and uncertainty since 1940, when Dr. Bittinger intimated that plaintiff had silicosis and a claim was filed against plaintiff's then employer. Dr. Vestal decided that plaintiff did not have silicosis at that time, plaintiff's case was dismissed, the usual work card was issued, and

plaintiff eventually returned to work for Victor Mica Company in 1942. He continued in that employment until 20 December, 1945, at which time he ceased working due to shortness of breath, loss of weight, and general physical inability to do the job. Then followed a period of medical treatment by various doctors finally culminating in X-rays of the lungs and an interpretation thereof in March, 1948, by Dr. C. D. Thomas, Director of the Western North Carolina Sanatorium at Black Mountain, who found plaintiff to be suffering from silicosis and so informed him. Medical opinion continued to disagree as to the presence of silicosis in plaintiff's lungs throughout the first hearing in this case on 23 August, 1949, and the controverted medical question was referred to the Advisory Medical Committee under the provisions of G.S. 97-68 through 97-71. That committee, composed of three eminent specialists in the field of lung diseases, made a detailed study of all X-rays of plaintiff's lungs from 1936 to date and took additional X-rays of their own. This committee's final conclusion is to the effect that plaintiff has moderately advanced silicosis, mild emphysema, chronic bronchitis, and lymphadenitis (etiology undetermined), indicating that his disability results from silicosis in its second stage.

"The commission therefore concludes as a matter of law that the plaintiff is suffering from silicosis in its second stage and that he is actually incapacitated because of that disease from performing normal labor in the last occupation in which he was remuneratively employed, that is, driving a truck and loading and unloading burlap bags filled with ground mica. He is therefore disabled within the meaning of G.S. 97-54, and due to the fact that he is now 39 years of age, trained and experienced only in the field of mining, possessing only a limited education, physically weak and underweight, there is no reasonable basis for the conclusion that he possesses the capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation free from the hazards of silicosis. He is thus an unfit subject for rehabilitation. . . .

"With reference to defendants' second contention, that plaintiff's right to compensation is barred by G.S. 97-58, the commission is of the opinion that plaintiff's claim was filed in apt time and that defendants' contention cannot be sustained. This aspect of the case, however, is not without difficulty, but our conclusion appears to be consonant with the legislative intent and with judicial interpretation."

Thereupon, and in conformity therewith, an award was made.

Defendants appealed therefrom to the full commission, which, after "review of the competent evidence, findings of fact, conclusions of law, and award made, adopted as its own the findings of fact and conclusions

of law of the hearing commissioner, and ordered that the result reached by him be affirmed,"—and that accordingly an award issue.

Defendants appealed therefrom to Superior Court, setting forth specific exceptions to certain findings of fact and conclusions of law,—and made motion to remand the proceeding to the Industrial Commission for specific finding whether, from the record in the case and particularly the evidence of Dr. C. D. Thomas, the plaintiff (claimant) was advised by Dr. Bittinger, in the year 1940, that plaintiff (claimant) had silicosis and should come out of the dusty trades on account thereof, and whether plaintiff (claimant) suffered a disablement in 1940 to 1942 from silicosis; and for a specific finding whether the plaintiff (claimant) was advised by competent medical authority in the year 1940 that he had silicosis.

Upon hearing in Superior Court, the presiding judge overruled each exception taken by defendants, and denied the motion of defendants to remand the proceeding, and affirmed the award of the Industrial Commission.

Defendants appeal therefrom to Supreme Court, and assign error.

*W. C. Berry and Warren H. Pritchard for plaintiff, appellee.*
*Smathers & Meekins for defendants, appellants.*

WINBORNE, J. Defendants, the appellants, state in their brief three questions as involved on this appeal, the first two of which call for express consideration,—decisions on which are determinative of the third.

I. It is insisted that the court below erred (1) in overruling defendants' exception to the finding of fact, No. 6, by the Industrial Commission that plaintiff was first advised by competent medical authority that he had silicosis on or about 24 March, 1948, when Dr. Thomas wrote a letter to that effect, and (2) in overruling defendants' motion that the cause be remanded to the Industrial Commission for a specific finding whether plaintiff was advised by competent medical authority in 1940 that he was under disablement from silicosis.

It is urged that this finding involves mixed questions of law and fact, which are not supported by the evidence, and that hence the award based thereon cannot be upheld. It is pertinent here to note that the statute G.S. 97-58 (b) provides that "the time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has the same."

In this connection it is contended that the record shows without contradiction that plaintiff was advised by Dr. Bittinger, in 1940, that he was under disablement from silicosis, and that, from the exhibits in the case and the medical reports, Dr. Bittinger was in the employment of the State of North Carolina, as Medical Director of the Western North

Carolina Sanatorium for tuberculosis at Black Mountain, and, hence, it is assumed that the court will take judicial notice of the public record of the State showing the appointment and employment of Dr. Bittinger in such capacity.

However, granting that Dr. Bittinger be a "competent medical authority" within the purview of the statute, G.S. 97-58 (b), as contended by defendants, the finding of fact No. 6 is tantamount to a finding that Dr. Bittinger had not advised plaintiff that he had silicosis. And the evidence shown in the record, when taken in light most favorable to claimant, is sufficient to support the finding as made.

True, it is made to appear from the Sanatorium records that Dr. Bittinger wrote two letters (1) 18 June, 1940, referring to examination of 13 June, 1940, in which he said: "I believe that Mr. Autrey has now definite evidence of pneumoconiosis of the silicotic type, though I do not believe that it is very extensive as yet"; and (2) 30 October, 1940, to Dr. McDuffie, in which he said: "We also believe that he has some silicosis with quite a good deal of chronic bronchitis and slight amount of pneumonosis." Neither of these letters appears to be addressed to plaintiff.

On the other hand, plaintiff, testifying on direct examination, stated that when Dr. Thomas made report that he, the plaintiff, had silicosis, this was the first time he had been informed that he had silicosis; and that prior thereto he did not know nor had he been advised by any doctor that he had silicosis. And in respect to the claim filed by him against Tennessee Mineral Products Company, plaintiff testified: "Dr. Bittinger . . . said I might have some silicosis and he wanted me out of the plant . . . I had not been told by Dr. Bittinger that a man that was short of breath might have silicosis . . . He said I might have silicosis . . . He told me I might have some symptoms of silicosis and he said he thought I should come out of the plant and work on the outside."

This testimony is positive and undenied.

II. Defendants also insist that the court below erred in overruling defendants' exceptions to the conclusions of the Industrial Commission holding, generally and in substance, that plaintiff's claim was filed in apt time, and that plaintiff should recover notwithstanding the provisions of G.S. 97-58 (a).

The question here presented is resolved against the contention of defendants on the authority of the case of *Duncan v. Carpenter,* 233 N.C. 422, 64 S.E. 2d 410.

In the *Duncan case,* opinion by *Denny, J.,* it is said: "In our opinion, by enacting G.S. 97-58, subsections (a), (b) and (c), the Legislature intended to authorize the filing of a claim for asbestosis, silicosis or lead poisoning where disablement occurs within two years after the last

exposure to such disease; and, although disablement may have existed from the time the employee quit work, such disablement, for the purpose of notice and claim for compensation, should date from the time the employee was notified by competent medical authority that he had such disease."

In the light of the above holding, the Industrial Commission finds, in the present case, that plaintiff is actually incapacitated because of silicosis from performing normal labor in the last occupation in which remuneratively employed, and concludes that he is thus disabled within the meaning of G.S. 97-54; that such disablement occurred at the time of plaintiff's last exposure on 20 December, 1945; that he was first advised on or about 24 March, 1948, by competent medical authority that he had silicosis; and that he filed his claim for compensation and notified his employer on 24 April, 1948.

Hence, the judgment from which appeal is taken is hereby
Affirmed.