LUCY WOOD TAYLOR v. J. P. STEVENS AND COMPANY AND LIBERTY MUTUTAL INSURANCE COMPANY

No. 35

(Filed 6 May 1980)

1. **Master and Servant § 68— workers' compensation—occupational disease—no requirement of proof of disability within year after exposure**

 A worker claiming disability from an occupational disease under the Workers' Compensation Act is not required to prove that the disability arose within one year from the last exposure to hazardous working conditions. Dictum in *Duncan v. Carpenter,* 233 N.C. 422, suggesting that disability from an

occupational disease other than asbestosis or silicosis must arise within one year of the last exposure is expressly overruled.

2. **Master and Servant §§ 68, 91— workers' compensation—occupational disease—time for filing claim**

   The time within which an employee must give notice or file a claim for an occupational disease runs from the time the employee is first informed by competent medical authority of the nature and work-related cause of his disease or "injury."

3. **Master and Servant § 68— workers' compensation—byssinosis—which statute applies—date of disability**

   Whether the 1963 version of G.S. 97-53(13) or the 1971 version of that statute, effective 1 July 1971, applies to a claim for disability resulting from byssinosis depends upon the date when plaintiff's disablement or actual incapacity from byssinosis occurred.

4. **Master and Servant § 68— workers' compensation—occupational disease—1963 statute—byssinosis**

   The 1963 version of G.S. 97-53(13) which provides that an occupational disease includes an "infection or inflammation of . . . internal . . . organs of the body due to . . . any other materials or substances" covers those persons suffering from byssinosis or brown lung disease or from occupational obstructive lung disease.

ON defendants' motion for discretionary review of a decision of the Court of Appeals, 43 N.C. App. 216, 258 S.E. 2d 426 (1979), vacating and remanding a decision by the full Industrial Commission affirming the decision of Conely, Deputy Commissioner, filed 19 December 1977.

On 5 December 1975 plaintiff, then a 61-year-old former textile worker, filed notice and claim of total permanent disability from chronic obstructive lung disease resulting from occupational exposure to cotton dust. After three hearings, the Deputy Commissioner found as a fact that plaintiff began working in a textile mill in Roanoke Rapids in 1928 at the age of fourteen. Throughout most of the following 35 years, she worked in the weave room as a weaver and smash hand, but was exposed to considerably more cotton dust in those work stations than usually encountered.

About 1939 she began experiencing a tightness in her chest which intensified when she came to work after a day off. At this time she also experienced coughing, incontinence and pain. After a two-year leave of absence in 1953-1955, her symptoms became worse. She had more shortness of breath and more coughing. By

1958 there was no change in her condition from one day to the next and she finally ceased working 2 August 1963. At that time she received Social Security disability for "ulcers, hernia, heart block, hypertension, and obesity."

After a long series of hospitalizations, she was told by a physician for the first time that she had byssinosis, or brown lung disease, in November 1975. She filed notice and claim of disability with defendants and the Industrial Commission.

Plaintiff was seen by two Industrial Commission physicians. Their opinions were somewhat inconsistent. One physician testified that in his opinion plaintiff had Byssinosis, Grade I. The other testified that the plaintiff had lung problems consistent with the diagnosis of chronic obstructive lung disease. From this testimony, the Deputy Commissioner found that plaintiff was disabled, in part, as a result of "an occupational chronic obstructive lung disease contracted as a result of her exposure to cotton dust in her employment." He denied plaintiff's claim for disability payments, however, on the ground that she had failed to carry the burden of proof that she was disabled within one year of the last exposure to the hazards of cotton dust, citing G.S. 97-58, G.S. 97-52, and *Duncan v. Carpenter*, 233 N.C. 422, 64 S.E. 2d 410 (1951) as authority.

Plaintiff appealed to the full Commission which affirmed the decision of the Deputy Commissioner 9 May 1978. Plaintiff then appealed to the Court of Appeals. That court held that the rule of *Duncan v. Carpenter, supra*, requiring proof of disability within one year of last exposure, was mere dictum and had been overruled by the inference of this Court in *Wood v. J. P. Stevens & Company*, 297 N.C. 636, 256 S.E. 2d 692 (1979) and *Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979). It vacated the Commission's order and remanded for further proceedings.

We allowed defendants' petition for discretionary review 4 December 1979.

*Teague, Campbell, Conely & Dennis by C. Woodrow Teague and George W. Dennis III for defendant appellants.*

*Davis, Hassell & Hudson by Charles R. Hassell, Jr., and Robin E. Hudson for the plaintiff appellee.*

CARLTON, Justice.

[1]   At issue in this case is whether a worker claiming disability from an occupational disease under the North Carolina Workers' Compensation Act, G.S. 97-1 *et seq.*, must prove the disability arose within one year from the last exposure to hazardous working conditions. We hold that she does not and therefore affirm and modify the decision of the Court of Appeals.

An employee seeking occupational disease disability payments under the North Carolina Workers' Compensation Act must negotiate a careful scheme of notice and claim in order to recover benefits. Both the general notice provisions of G.S. 97-22 and the general claim provisions of G.S. 97-24 are triggered by the occurrence of an *accident* rather than the onset of an *injury*, a statutory plan followed in half of the states in the country. 3A. Larson, *Workmen's Compensation Law* § 78.42(a) (1976). However, this presents peculiar problems in the case of a latent injury or an occupational disease. Unlike accidents which are sudden and obvious, such diseases and injuries frequently develop insidiously, and, in the case of diseases, usually only manifest themselves after long and cumulative exposure to hazardous substances. The General Assembly, in providing for *notice* to employers, has considered the latent quality of occupational diseases and has expressly circumvented the problem.

Thus, while G.S. 97-22 provides:

Notice of accident to employer.—Every injured employee or his representative shall immediately on the occurrence of an *accident*, or as soon thereafter as practicable, give or cause to be given to the employer a written notice of the accident . . . but no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the *accident* or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby (Emphasis added).

G.S. 97-58(b) states simply that "[t]he time of notice of an occupational disease shall run from the date that the employee has been

advised by competent medical authority that he has [the occupational disease]."[1]

The plan for complying with the *claim* provisions of the statute in the case of occupational diseases is a little more complex. The general claim provisions of G.S. 97-24(a) provide that a claim must "be filed with the Industrial Commission within two years after the *accident*." (Emphasis added.) G.S. 97-52, however, provides that "[d]isablement or death of an employee resulting from an occupational disease . . . shall be treated as the happening of an *injury by accident*." (Emphasis added.)

The statutory scheme does not stop there. G.S. 97-58(c) further provides that in the case of an occupational disease, "The right to compensation . . . shall be barred unless a claim be filed with the Industrial Commission within two years after death, *disability*, or *disablement* as the case may be." (Emphasis added.)

*Disability* and *disablement* are technical words defined elsewhere in the statutes. G.S. 97-55 provides that "[t]he term *'disability'* . . . means the state of being incapacitated as the term is used in defining disablement in G.S. 97-54." (Emphasis added.)

G.S. 97-54 provides that in all cases of occupational disease other than asbestosis or silicosis, " 'disablement' shall be equivalent to 'disability' as defined in G.S. 97-2(9)."

G.S. 97-2(9) provides, "The term 'disability' means incapacity because of *injury* to earn the wages which the employee was receiving at the time of *injury* in the same or any other employment." (Emphasis added.)

Although this statutory route is circuitous and somewhat redundant, it seems clear that the General Assembly has emphasized that two factors trigger the onset of the two-year period in the case of an occupational disease. Time begins running when an employee has suffered:

(1) injury from an occupational disease which

---

1. The record here shows that the plaintiff was first told by competent medical authority on 9 November 1975 that she had byssinosis. She filed her notice of disability with her employer on 5 December 1975, well within the 30-day requirement of G.S. 97-22. She has therefore fully complied with the notice requirements of the Act.

(2) renders the employee incapable of earning the wages the employee was receiving at the time of the incapacity by injury.

Defendants assert here that the disablement must in any event be within one year of last exposure to the occupational hazard which led to the disease. They rely for authority on *Duncan v. Carpenter*, 233 N.C. 422,. 64 S.E. 2d 410 (1951).

In *Duncan v. Carpenter, supra*, plaintiff was claiming disability from silicosis under G.S. 97-58. Then, as now, that statute in pertinent part provided:

Claims for certain diseases restricted; time limit for filing claims. — (a) [A]n employer shall not be liable for any compensation for asbestosis or silicosis or lead poisoning unless disablement or death results within two years after the last exposure to such disease, or, in case of death, unless death follows continuous disablement from such disease, commencing within the period of two years limited herein, and for which compensation has been paid or awarded or timely claim made as hereinafter provided and results within seven years after such last exposure. . . .

(b) The report and notice to the employer as required by G.S. 97-22 shall apply in all cases of occupational disease except in case of asbestosis, silicosis, or lead poisoning. The time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has same.

(c) The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years [then one year] after death, disability, or disablement as the case may be.

The *Duncan* Court construed G.S. 97-58(a) *in pari materia* with G.S. 97-58(b) and held that time for claim to the Industrial Commission in the event of asbestosis, silicosis and lead poisoning should "date from the time the employee was notified by competent medical authority that he had such disease." 233 N.C. at 427, 64 S.E. 2d at 414. However, the Court went on to say,

It follows, however, as a matter of course, that the finding of the competent medical authority must be to the ef-

fect that disablement occurred within two years from the last exposure in cases of asbestosis, silicosis and lead poisoning, *and in claims involving other occupational diseases that disability occurred within one year thereof.*

*Id.*, 64 S.E. 2d at 414 (Emphasis added).

Defendants cite this passage as settled authority that plaintiff must show she was disabled from lung disease within one year of her last exposure to cotton dust. We disagree and to the extent that dictum in *Duncan v. Carpenter* has been construed to mean that disablement must be within one year of last exposure from hazards in the case of all occupational diseases, that construction is expressly disavowed.

It is clear that the *Duncan* Court was deciding the time for disablement in a case of silicosis and only a case of silicosis. It is also clear that silicosis, along with asbestosis, holds a special place in our Workers' Compensation Act. G.S. 97-60 through G.S. 97-61.7 set up a special program which monitors workers at risk of developing these diseases. Furthermore, unlike the case of disablement from other occupational diseases, disablement from silicosis and asbestosis is measured from the time a claimant can no longer work at dusty trades, not from the time he can no longer work at *any* job. G.S. 97-54. The inference is clear that because an employee with either of these diseases would have been carefully monitored throughout his entire course of employment and would have been, theoretically at least, informed of the presence of either of these diseases and removed from the hazard before reaching total disability, and in fact would have been compensated for the removal, the two-year time limit for disability under G.S. 97-58(a) was an equitable provision.

Nothing in G.S. 97-58(a) or indeed any other provision of the Workers' Compensation Act, however, limits disablement from *other* occupational diseases to a time one year subsequent to last exposure to hazardous substances. Certainly, the special statutory provisions justifying such a limit for disablement in the case of asbestosis and silicosis are absent from provisions for other occupational diseases. Equally certain, the question of time of disablement in any *other* occupational disease was not before the Court in *Duncan v. Carpenter.* Thus the sentence in that case relied upon by defendants here to limit claims for all occupational

diseases was mere *obiter dictum* and is not binding on this Court or any other.

The problem remains, however, that plaintiff here has presented some evidence her disablement began in 1963, but she did not claim her benefits until 1975, long past the two-year claim period provided by G.S. 97-58(c). Defendants alternately argue that plaintiff's claim should be barred since she did not comply with G.S. 97-58(c).

This Court has long held that disablement for the purpose of notice and claim in the case of silicosis and asbestosis dates from the time an employee was first advised he had the disease, even if the disablement existed from the time the employee quit work. Thus in *Autrey v. Victor Mica Company*, 234 N.C. 400, 67 S.E. 2d 383 (1951), claimant ceased work in 1945, three years prior to his claim. At that time he was told he had asthma and dust allergy. Only in 1948 was he informed that the nature of his disease was silicosis and that the silicosis was work related. This Court held his claim allowable and dated the time of disablement for the purpose of making a claim from the time he was told by a competent doctor in 1948 that he had silicosis. Indeed, even in *Duncan v. Carpenter, supra*, claimant was allowed benefits when he filed some three days beyond the then existing statutory period for making claims. There, as in *Autrey, supra*, and the case *sub judice*, the claimant was informed of the nature and work-related quality of his disease only close to or after the time for making claim had expired.

The reasoning the Court applied in *Autrey, supra*, and *Duncan, supra*, for holding that time for claims runs from notification of injury is equally applicable here. Like silicosis and asbestosis, byssinosis is an insidious disease. The Legislature, in the notice section of the statute for occupational diseases, G.S. 97-58(b), has recognized the peculiar problems of such a disease and has dated the time for making notice, not from the time of actual physical incapacity, but from the date of notification by competent medical authority of the nature and work-related quality of the disease. The claim provision of G.S. 97-58(c), however, makes no such allowance. To construe our statutes so that an employee seeking benefits can notify his employer within 30 days of the time he is told by competent medical authority that he suffers from an oc-

cupational disease, but then to prevent him from recovering because he was not told within two years of his incapacity that he suffered an occupational disease, would be to render our statutory scheme absurd.

This we are unwilling to do. Such a construction contradicts established principles of statutory analysis. Statutes dealing with the same subject are *in pari materia* and should be construed together. *Newlin v. Gill*, 293 N.C. 348, 237 S.E. 2d 819 (1977); *Cedar Creek Enterprises, Inc. v. Department of Motor Vehicles*, 290 N.C. 450, 226 S.E. 2d 336 (1976); *Duncan v. Carpenter, supra*. Where language is ambiguous, the court must construe it to ascertain the true legislative intent. *Institutional Food House, Inc. v. Coble*, 289 N.C. 123, 221 S.E. 2d 297 (1976); *Underwood v. Howland*, 274 N.C. 473, 164 S.E. 2d 2 (1968); *Young v. Whitehall Company, Inc.*, 229 N.C. 360, 49 S.E. 2d 797 (1948). And where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the policy and goals behind the statute should control. *Mazda Motors of America, Inc. v. Southwestern Motors, Inc.*, 296 N.C. 357, 250 S.E. 2d 250 (1979); *Duncan v. Carpenter, supra; State v. Barksdale*, 181 N.C. 621, 107 S.E. 505 (1921).

[2] It is clear that our Legislature never intended that the statutory scheme of G.S. 97-58 would be construed to render time for notice and claim absurd. It is equally clear that our Legislature never intended that a claimant for workers' compensation benefits would have to make a correct medical diagnosis of his own condition prior to notification by other medical authority of his disease in order to timely make his claim. *Duncan v. Carpenter, supra; Autrey v. Victor Mica, supra*. Thus we hold that with reference to occupational diseases the time within which an employee must give notice or file claim begins to run when the employee is first informed by competent medical authority of the nature and work-related cause of the disease.

[3] This is not to say that the time of disablement for other statutory provisions is necessarily the date a claimant was informed he was disabled by an occupational disease. We can see from the facts *sub judice* that while an employee may be suffering a debilitating disease of an origin totally unknown to him, he still feels the economic and physical ravages of disability. Thus

for the purpose of determining whether the 1963 or the 1971 version of G.S. 97-53(13) should apply, as well as determining what the statutory benefits are, we hold that whether section 1 of Chapter 965 of the 1963 Sesison Laws or the current version of G.S. 97-53(13), effective 1 July 1971, applies in this case depends upon the date when plaintiff's disablement or actual incapacity due to byssinosis occurred. This holding accords with our decision in *Wood v. Stevens & Company*, 297 N.C. 636, 256 S.E. 2d 692 (1979), where we said: "[T]he better rule in cases involving occupational disease is to apply the law in effect at the time the employee becomes disabled, at least where the statute does not dictate a contrary result. Our decision in this regard is in accord with authority from other jurisdictions." *Id.* at 645, 256 S.E. 2d at 698. The date when plaintiff became disabled due to byssinosis is deemed to be the date upon which she sustained an injury by accident, G.S. 97-52. As mentioned earlier in this opinion, G.S. 97-2(9) further provides, "The term 'disability' means incapacity because of injury to earn the wages which the employee was earning at the time . . . in the same or other employment." It is therefore incumbent upon the Industrial Commission to determine when plaintiff became disabled or actually incapacitated due to byssinosis before it decides which law applies to her claim. If the Commission finds she became disabled after 1 July 1971, the effective date of the current version of G.S. 97-53(13), it should determine her claim in accordance with that statute. If it finds her disablement occurred prior to 1 July 1971, then the 1963 law will control.

In the case *sub judice*, plaintiff's counsel stated on oral argument that she was disabled within the meaning of the statute on 1 August 1963. This allegation, however, has never been found as a fact. Accordingly, this case must be remanded to the Industrial Commission to make that determination.

We note that on appeal to the full Industrial Commission from the decision of the Deputy Commissioner, plaintiff unsuccessfully attempted to introduce affidavits of friends and neighbors as evidence of her disability in 1963. She did this because the Deputy Commissioner had found that at her original hearing, the only evidence she presented of disability — her own testimony — was "not credible." While we realize that a motion to present new or additional evidence is addressed to the discretion

of the Commission, *Wood v. J. P. Stevens, supra; Hall v. Thomason Chevrolet, Incorporated,* 263 N.C. 569, 139 S.E. 2d 857 (1965); G.S. 97-85, because the case must be remanded for further hearings to determine the actual date of disability, any and all competent evidence presented at new hearing about this date would no doubt be relevant.

[4] We further note that if indeed plaintiff became disabled in 1963, the version of the Workers' Compensation Act then existent fully covers her occupational obstructive lung disease. The statutory definition then existing provided coverage for: "Infection or inflammation of the skin, eyes or other external contact surfaces or oral or nasal cavities or any other internal or external organ or organs of the body due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances." 1963 N.C. Sess. Laws ch. 965.

Whether a given illness falls within the general definitions set out in the Workers' Compensation Act, G.S. 97-53(13) presents a mixed question of fact and law. *Wood v. J. P. Stevens & Company, supra* at 640, 256 S.E. 2d at 695. In the record of this case, both of the Industrial Commission's expert witnesses testified that byssinosis is a lung disease caused by the inhalation of cotton dust in the course of one's employment which debilitates one suffering from the disease by inflaming the tracheal-bronchial tree and blocking the lungs' capacity to exchange air. This fully conforms to the statutory definition of an "infection or inflammation of . . . internal . . . organs [the lungs] of the body due to . . . any other materials or substances [cotton dust]."

Further, we note that while one expert witness testified that plaintiff here had byssinosis, the other testified only that she had an obstructive lung disease. They both agreed plaintiff's symptoms indicated an inflammation of the tracheal-bronchial tree which compromised her ability to breathe. The Deputy Commissioner determined this compromised breathing capacity was a result of occupational exposure to cotton dust. This, too, fully conforms to the statutory definition contained in the 1963 version of the Workers' Compensation Act.

In summary, we therefore hold that (1) dicta in *Duncan v. Carpenter, supra,* suggesting that time of disability in the event of an occupational disease other than silicosis or asbestosis runs

from one year of last exposure is expressly overruled; (2) time for making a claim for an occupational disease runs from the time a claimant is notified by competent medical authority of the nature and work-related quality of his disease or "injury"; (3) time of disablement for the purpose of deciding which version of the Workers' Compensation Act to apply runs from the date the claimant was incapable of working due to the later diagnosed occupational disease and (4) the 1963 version of the Workers' Compensation Act provides benefits for those suffering from byssinosis or brown lung disease, and occupational obstructive lung disease of the type this plaintiff suffers.

Accordingly, the decision of the Court of Appeals in this case is modified and affirmed. The case is remanded to that court so that it can remand to the Industrial Commission for further hearings to determine as a matter of fact the date of plaintiff's actual physical inability to earn her living due to her obstructive lung disease.

Modified, affirmed and remanded.