***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly named.
2. An employer-employee relationship existed between plaintiff and defendant at the time of the incident that gave rise to this claim.
3. Defendant regularly employed three or more employees at the time of the incident that gave rise to this claim, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. Defendant, at the time of the incident that gave rise to this claim, was self insured, with Kemper Risk Management Services, Inc., acting as its servicing agent.
5. Pursuant to the Industrial Commission Form 33 Request for Hearing filed by plaintiff, the alleged date of injury was September 10, 1999. On that date, plaintiff was employed by defendant as a filling machine operator.
6. At the hearing before the Deputy Commissioner, the parties submitted the following documents, which were each admitted into evidence:
a. Packet of Medical Records, marked as Stipulated Exhibit 2;
 b. Industrial Commission Form 22 Wage Chart for Plaintiff marked as Stipulated Exhibit 3;
 c. Industrial Commission Form 22 Wage Chart for a Comparable Employee, marked as Stipulated Exhibit 4;
 d. Transcript of Plaintiff's Recorded Statement, marked as Stipulated Exhibit 5;
e. Discovery Responses, marked collectively as Stipulated Exhibit 6;
 f. Packet of Industrial Commission Forms, marked as Stipulated Exhibit 7; and,
 g. Injury Report Form from Defendant, marked as Stipulated Exhibit 8.
8. The issues for determination are as follows:
 a. Whether plaintiff sustained a compensable injury by accident on or about the alleged date of injury;
b. If so, to what, if any benefits is plaintiff entitled; and,
 c. If not, is defendant entitled to the payment of attorney's fees pursuant to G.S. § 97-88.1.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty years of age, her date of birth being July 13, 1961. Plaintiff has an associate's degree in commercial graphics from McDowell Technical College, and currently resides in Florida.
2. Plaintiff was employed by defendant as a filling machine operator at the time of the incident that gave rise to this claim. Plaintiff worked the third shift (late night to early morning). Plaintiff's main job duty was to fill intravenous (IV) solution bags. To do so, plaintiff would begin by removing an empty IV bag from a stack of bags by her side. Plaintiff would hold the empty IV bag in her left hand and would join it with a nozzle held in her right hand. Plaintiff would next use the nozzle to fill the bag with a particular solution, and would then plug the IV bag once it was full. Plaintiff estimates that she filled fifteen bags per minute in this manner.
3. At the hearing before the Deputy Commissioner, plaintiff testified, and the Full Commission finds as fact, that during the early hours of September 10, 1999, while filling an IV solution bag, she experienced severe pain from the middle of her back and around to her left side. At that time, she believed she had passed a kidney stone as plaintiff had experienced a kidney stone six or seven years prior. It was not until September 22, 1999, that plaintiff was made aware that her pain was actually the result of a pulled muscled. The Full Commission finds that the incident on September 10, 1999, caused a compensable injury to plaintiff's back, which arose out of and in the course of the employment and is the direct result of a specific traumatic incident, occurring at a cognizable time, as provided in the Workers' Compensation Act.
4. Plaintiff's training supervisor was working close by her on the date in question. Plaintiff testified that she requested to sit down because of her pain, but did not report any specific incident. Plaintiff's training supervisor told her she could not sit.
5. On September 10, 1999, plaintiff was examined by Dr. William V. Fowler. Dr. Fowler's notes reflect that plaintiff complained of kidney related problems and pain in the left lower quadrant of her back. Although no objective problems with plaintiff's kidneys or back were detected, Dr. Fowler removed plaintiff from work through September 13, 1999, because she had a higher than normal temperature. Dr. Fowler's records from this initial examination contain no reference to any work related incident; however, the Full Commission finds that this lack of notation regarding a work related injury merely reflects plaintiff's initial belief that she was again suffering from a kidney stone. Given that plaintiff had suffered from a previous kidney stone, it was reasonable for Dr. Fowler to initially suspect a reoccurrence of kidney stones without advancing other potential causes, such as a work related injury, at that time. Physicians, when forming a differential diagnosis, must often pursue the most likely diagnosis for a particular pain or symptom before considering other alternative diagnoses.
6. When plaintiff returned to the plant, she was unable to work due to the discomfort she was experiencing. Plaintiff stated that the muscles in her back felt "hard" and "sore." Plaintiff returned to Dr. Fowler on September 15, 1999. Dr. Fowler concluded that plaintiff's problems were not likely a result of kidney stones, as her IVP and lab results were normal. Noting her ongoing symptoms, Dr. Fowler began to explore other possible diagnoses for plaintiff's pain and symptoms. At that time, Dr. Fowler thought plaintiff's pain could be from scarring associated with a recent hysterectomy; however, he concluded that further evaluation was warranted and ordered an upper abdomen CT-scan.
7. The evidence of record, including Stipulated Exhibit 3, supports a finding that the last date plaintiff worked for defendant was September 17, 1999. On that date, plaintiff left work unable to perform her duties because of her pain. Plaintiff did not inform defendant of any injurious incident at work; however, the Full Commission finds that plaintiff was still incorrectly belaboring under the belief that her injury was caused by causes independent of her work for defendant. Consequently, plaintiff could not have attributed her pain to a work related injury because her physician had yet to reach the correct diagnosis of a pulled muscle.
8. On September 22, 1999, plaintiff returned to Dr. Fowler's office and was seen by Linda Markley, a physician's assistant associated with Dr. Fowler. Plaintiff reported continued pain to Ms. Markley and stated that particular motions, unique to the actions she must perform when filling bottles at work, cause her to have back spasms. Ms. Markley diagnosed plaintiff as having a pulled muscle, noting an area of tenderness and a slight spasm in response to deep palpation on plaintiff's left side in the paralumbar sacral area. Ms. Markley suggested physical therapy to treat the pulled muscle and wrote plaintiff a note requesting defendant to allow plaintiff to try a modified position that would not involve the same activity as plaintiff's current position.
9. Plaintiff returned to work on September 23, 1999, with the note from Dr. Fowler's office. Defendant informed plaintiff that she was still in her probationary period and that defendant could not change plaintiff to another job to accommodate any restrictions. Furthermore, defendant considered plaintiff to be terminated as of September 17, 1999, when she last attempted to work. At the hearing before the Deputy Commissioner, plaintiff testified that she was not aware of her termination until September 22, 1999, when she first reported her work related injury to defendant.
10. Following her termination by defendant, plaintiff was not given any work restrictions. On October 7, 1999, Dr. Fowler's office prescribed Flexeril and Naprosyn to aid plaintiff's pain. Plaintiff testified that she began physical therapy and did not feel "any more pain" within a short time. Thereafter, in October 1999, plaintiff found part-time work with Quality Plastics. Plaintiff resigned from that position to begin working full-time with Continental Teaves as an anti-lock break assembler on November 4, 1999, at $8.40 per hour.
11. Plaintiff returned to Dr. Fowler's office on November 5, 1999, the day after her first day at Continental Teaves. At that time, plaintiff complained of some low back pain, but stated that her new job did not cause her muscle strain. The doctor's note from that visit indicates that plaintiff was in no acute distress and was able to walk and move easily. Based upon this evidence, the Full Commission finds that any temporary total disability due plaintiff should conclude no later than November 4, 1999, when plaintiff began her employment with Continental Teaves and reported to her doctor that she had no difficulties in performing the job.
12. Plaintiff worked for Continental Teaves until she was permanently laid off in June 2000. In August 2000, plaintiff found a full-time job as a machine threader with Coats American earning $10.00 per hour, but resigned in September 2000. In October 2000, plaintiff began working full-time in the dining room of Peaceful Valley Ranch, but resigned within two weeks.
13. In November 2000, plaintiff went to work for J.R. Graphics, operating a copier and doing design, layout, and binding work for $7.00 per hour. Plaintiff testified that she resigned this position in part because bending over caused her to experience back pain, which she related to the incident at issue. However, there is no record of plaintiff seeking any medical attention for her back following her last visit to Dr. Fowler's office on November 5, 1999, until February 9, 2001, after plaintiff had moved to Florida. Based upon the totality of evidence, plaintiff's testimony regarding a causal connection between her symptoms beginning in November 2000 and any incident that took place while she was employed by defendant is given little weight.
14. Subsequent to arriving in Florida, plaintiff was examined by Dr. J.F. Hull on February 9, 2001. Records from that examination reflect that plaintiff reported her symptoms had begun as a consequence of an incident unrelated to any incident while working for defendant. Dr. Hull eventually diagnosed plaintiff with degenerative disc disease of the lumbosacral spine with osteoarthritis.
15. Pursuant to the Industrial Commission Form 22 Wage Chart of a comparable Baxter International employee entered into evidence asStipulated Exhibit 4, plaintiff's average weekly wage as of September 10, 1999 was $350.49, which yields a compensation rate of $233.64 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 10, 1999, plaintiff suffered a compensable injury to her back, which arose out of and in the course of her employment with defendant and is the direct result of a specific traumatic incident, occurring at a cognizable time, as provided in the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6); See also Bradley v. E.B. Sportswear,Inc., 77 N.C. App. 450, 335 S.E.2d 52 (1985).
2. Plaintiff was rendered temporarily totally disabled by her compensable back injury from September 10, 1999, through November 4, 1999, and is due compensation for such disability. N.C. Gen. Stat. §97-29.
3. As a result of her compensable back injury, defendant is liable for related medical treatment that was reasonably necessary to effect a cure, give relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. The fact that plaintiff did not immediately notify defendant of her work related back injury because she thought it was a reoccurrence of kidney stones is not determinative in this matter. As the North Carolina Supreme Court stated in Taylor v. J.P. Stevens and Co., 300 N.C. 94,265 S.E.2d 144 (1980), our legislature never intended that a claimant for workers' compensation benefits would have to make a correct medical diagnosis of her own condition prior to notification by medical authority of her disease or injury. Thus, just because plaintiff and her physician initially suspected the diagnosis of plaintiff's pain to be other than her final diagnosis of a pulled muscle does not bar compensation due plaintiff.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at the rate of $233.64 per week for the period of September 10, 1999, through November 4, 1999, subject to the attorney's fee approved below. Because this compensation has accrued, it shall be paid in a lump sum with interest at 8 percent per annum from the date of the hearing before the Deputy Commissioner.
2. Defendant shall pay to plaintiff's counsel in one lump sum a reasonable attorney's fee in the amount of twenty-five (25%) of the accrued compensation due plaintiff. Plaintiff herself is to receive all the interest due.
3. Defendant shall pay for medical expenses incurred as a result of the compensable injury to plaintiff's back as was reasonably required to effect a cure, provide relief, or lessen the period of disability.
4. Defendant shall pay the costs.
This 6th day of March 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER