DENNIE J. TAYLOR, EMPLOYEE, PLAINTIFF v. CONE MILLS CORPORATION, EMPLOYER AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 191A82

(Filed 13 July 1982)

**Master and Servant § 68— occupational disease—byssinosis—coverage under Session Laws for disablement prior to 1 July 1963**

The Commission and the Court of Appeals erred in finding as fact and concluding as law that the respiratory surfaces of the lungs are not "external contact surfaces" of the body within the meaning of the version of G.S. 97-53(13) in effect at the time plaintiff became disabled on 5 January 1963, and plaintiff was entitled to compensation for his disability resulting from byssinosis.

ON appeal as a matter of right pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals, 56 N.C. App. 291, 289 S.E. 2d 60 (1982), one judge dissenting, affirming the opinion of the North Carolina Industrial Commission filed 31 March 1981 denying a claim by plaintiff under the North Carolina Workers' Compensation Act.

We reverse and hold that compensation is allowable for disabling byssinosis contracted prior to 1 July 1963 under the definition of occupational diseases contained in the Workers' Compensation Act in effect prior to that date.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Henry N. Patterson, Jr., Michael K. Curtis and Jonatha R. Harkavy, for plaintiff-appellant.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr., for defendant-appellees.*

CARLTON, Justice.

I.

On 7 April 1975 plaintiff filed a claim with the North Carolina Industrial Commission seeking compensation for permanent and total disability caused by byssinosis allegedly contracted during his employment by defendant Cone Mills Corporation (Cone Mills) at the White Oak Plant. Plaintiff alleged that he began experiencing periods of temporary partial disability in 1959 and became

totally and permanently disabled in January of 1963. It was stipulated that the parties were subject to and were covered by the provisions of the North Carolina Workers' Compensation Act at the time plaintiff allegedly contracted byssinosis and that an employer-employee relationship existed between Cone Mills and plaintiff from 1949 to 4 January 1963.

At the hearing before Deputy Commissioner Ben E. Roney, Jr., plaintiff presented evidence of his work history, which showed that he had worked at a cotton mill not owned by Cone Mills for brief periods of time between 1929 and 1938, that he worked at another cotton mill from 1938 to 1944 and that he worked for defendant Cone Mills from 1949 to January 1963, when he became disabled. During the intervening periods of time he was employed outside the textile industry. Medical evidence showed that plaintiff had been disabled for work since 1963 by byssinosis. Dr. Leo J. Heaphy, whose testimony was received in the form of a deposition, stated that at the time plaintiff retired from employment with Cone Mills he was suffering from "Byssinosis, Stage III . . . (chronic obstructive lung disease—pulmonary emphysema and chronic bronchitis—due to longterm exposure to cotton trash dust). The [plaintiff] was totally and permanently disabled at the time of his retirement." Dr. Kaye H. Kilburn also testified by deposition and discussed the pathology of the reaction caused by prolonged exposure to cotton dust. He also stated that the entire respiratory surface of the lungs is an "external contact surface" because it is in constant contact with the external environment and is responsive to environmental materials.[1]

Defendants presented no evidence.

Based on the evidence admitted at the hearing Deputy Commissioner Roney made extensive findings of fact in which he re-

---

1. Under G.S. 97-53(13), as it existed at the time plaintiff became disabled, the following occupational diseases were made compensable:

(13) Infection or inflammation of the skin or eyes or other external contact surfaces or oral or nasal cavities due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases, or vapors, and any other materials or substances.

Law of March 26, 1935, ch. 123, 1935 N.C. Public Laws 130 (1935), as amended by Law of June 12, 1957, ch. 1396, s. 6, 1957 N.C. Sess. Laws 1589 (1957).

counted plaintiff's work history and the various medical problems suffered by plaintiff as a result of conditions in the workplace. He also found the following facts:

10. Claimant experienced long-term exposure to respirable cotton trash dust while working for defendant employer from 1949 through October 1962. He developed severe chronic obstructive pulmonary disease as a result of this exposure. He is suffering from byssinosis. Claimant also suffers from cor pulmonale and arteriosclerotic heart disease with intermittent angina pectoris.

11. Claimant experienced permanent injury to the lungs resulting from long-term exposure to cotton trash dust.

12. Byssinosis is a disease proven to be due to causes and conditions peculiar to and characteristic of employment in cotton textile mills. The precise identity of the offending agent is unknown. Cotton goods that have been dyed or washed or otherwise treated have lost their capacity to produce any kind of ill effect.

13. The pathology of byssinosis is essentially that of chronic bronchitis; i.e., inflammation of the small airways that conduct air to and from the alveoli. Mucous production and white blood cell recruitment occurs when respirable cotton trash dust falls onto the cells of the airways. Mediators are released, causing narrowing of the airways. An asthmatic like response results. Increase in body temperature and decrease in the capacity of the lungs to exchange gas are acute responses to exposure to respirable cotton trash dust.

14. The lungs are essential internal organs of respiration. They are two in number, placed one on each side of the chest and separated from each other by the heart and other contents of the mediastinum.

15. The respiratory surfaces of the lungs are not external contact surfaces of the body.

16. Claimant became incapacitated on 5 January 1963 from earning the wages he was receiving at the time thereof in the same or any other employment because of severe fixed small and large airways obstructive and restrictive ven-

tilatory impairment. This incapacity to earn wages results from permanent injury to the lungs.

17. Claimant's average weekly wages were $60.21.

Deputy Commissioner Roney then concluded as a matter of law that the Workers' Compensation Act as it existed on 5 January 1963, the date of plaintiff's disability, did not provide for payment of compensation for disability occasioned by byssinosis. He concluded as a matter of law that the respiratory surfaces of the lungs were not external contact surfaces of the body but that the lungs were essential internal organs of respiration and, thus, plaintiff's disease was not an occupational disease as that term was defined by G.S. 97-53(13) in 1963. Implicit in his conclusion was his belief that the 1963 version of the Act embraced coverage for infection or inflammation of only external bodily surfaces as a result of irritants in the workplace. Nonetheless, the Commissioner then concluded that plaintiff was entitled to compensation for permanent injury to important organs of the body occasioned by byssinosis that might reasonably be presumed to have caused the diminution of his future earning capacity, and awarded plaintiff $7,000, citing Chapter 1305 of the 1979 North Carolina Session Laws.[2]

Both plaintiff and defendants appealed to the full Commission. The Commission found the facts to be the same as those

---

2. That chapter provided:

AN ACT TO PROVIDE THAT BYSSINOSIS, KNOWN AS "BROWN LUNG DISEASE", SHALL BE DEEMED AN OCCUPATIONAL DISEASE WITHIN THE MEANING OF G.S. 97-53(13) FOR PURPOSES OF WORKMEN'S COMPENSATION CLAIMS REGARDLESS OF THE DATE THE DISEASE ORIGINATED.

The General Assembly of North Carolina enacts:

Section 1. Claims for "brown lung disease", which can be proved under G.S. 97-53(13) shall be compensable regardless of the employee's date of last injurious exposure.

Sec. 2. This act is effective upon ratification.

Sec. 3. This act will expire April 30, 1981; however, this provision does not apply to any claims filed prior to April 30, 1981.

In the General Assembly read three times and ratified, this the 25th day of June, 1980.

Law of June 25, 1980, Ch. 1350, 1979 N.C. Sess. Laws 217 (1980).

found by the deputy commissioner and concluded, as did Deputy Commissioner Roney, that the lungs are not "external contact surfaces" and that plaintiff was not entitled to compensation under G.S. 97-53(13) as it existed on the date he became permanently disabled. The Commission, however, did not agree that plaintiff's diminution of future earning capacity was made compensable by Chapter 1305 of the 1979 Session Laws and denied his claim *in toto*. Commissioner Vance dissented.

Plaintiff appealed to the Court of Appeals. The Court of Appeals affirmed in an opinion by Judge Wells, in which Judge Robert M. Martin concurred. Citing the pre-1963 version of G.S. 97-53(13),[3] that court noted that the dispositive question on plaintiff's claim for disability due to byssinosis was whether byssinosis manifests itself as an irritation of "other external contact surfaces" of the human body. Although Judge Wells quoted several pages of the extensive medical testimony of Dr. Kilburn which included the opinion that byssinosis was an inflammation of an "external contact surface," Judge Wells concluded that such terms were not technical in nature and should therefore be construed in accordance with their common and ordinary meaning. So construing the word "external," the Court of Appeals held that ordinary usage of the word would lead to the conclusion that its reference here was to a part of the body outwardly situated or relating to the outside or outer part of the body, *i.e.*, that "external" refers to or modifies "surfaces." Since the lungs are internal organs of the body, the Court of Appeals reasoned that the Legislature did not intend coverage for byssinosis under the statute in effect on the date of plaintiff's last injurious exposure and the date of his disability. The court cited the 1 July 1963 amendment of G.S. 97-53(13) to include "internal organs" in support of its interpretation of the prior version of the statute. The Court of Appeals also held that Chapter 1305 of the 1979 Session Laws[4] had no application to plaintiff's claim.

Judge Webb dissented. He disagreed that the words "external contact surface" had no technical meaning. Relying on the expert medical testimony, he stated that the respiratory surface of the lung was an external contact surface and, therefore, that the

---

3. G.S. 97-53(13) is set out in full in note 1 *supra*.

4. See note 2 *supra* for the text of that act.

Taylor v. Cone Mills

pre-1963 version of G.S. 97-53(13) allowed recovery for disability caused by byssinosis.

We agree with Judge Webb and reverse.

## II.

Defendants do not challenge the Commission's finding and conclusion that plaintiff became permanently disabled on 5 January 1963 as a result of byssinosis developed from exposure to cotton dust while plaintiff was employed by defendant from 1949 through 1962. The question dispositive of this appeal, therefore, is whether the Court of Appeals erred in affirming the Industrial Commission's conclusion of law that the pertinent section of the Workers' Compensation Act in effect on 5 January 1963 did not provide for payment of compensation for disability occasioned by byssinosis.

In enumerating diseases and conditions deemed to be occupational diseases within the meaning of the Workers' Compensation Act, G.S. 97-53(13) as written prior to 1 July 1963 included, "Infection or inflammation of . . . *other external contact surfaces* due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances." (Emphasis added.)[5]

---

5. G.S. 97-53(13) has since been twice amended. Effective 1 July 1963 the statute was amended to provide:

(13) Infection or inflammation of the skin, eyes, or other external contact surfaces or oral or nasal cavities or any other internal or external organ or organs of the body due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

The provisions of this subsection shall not apply to cases of occupational diseases not included in said subsection prior to [July 1, 1963,] unless the last exposure in an occupation subject to the hazards of such disease occurred on or after [July 1, 1963].

Law of June 18, 1963, Ch. 965, s. 1, 1963 N.C. Sess. Laws 1224 (1963). This language was stricken out by a 1971 amendment. The 1971 amendment remains the current language of subsection 13 and provides:

(13) Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

G.S. § 97-53(13) (1979).

The Commission found, and no one disputes, that plaintiff experienced permanent injury to his lungs by reason of the effects of byssinosis. However, the Commission concluded, and the Court of Appeals agreed, that the respiratory surfaces of the lungs are not "external contact surfaces" of the body within the meaning of the quoted statute and, thus, that plaintiff's disability was not compensable. In so holding, the Commission and the Court of Appeals erred.

Whether a given illness falls within the general definition of an occupational disease set out in G.S. 97-53(13) is a mixed question of fact and law. *Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 640, 256 S.E. 2d 692, 695 (1979); *accord, Taylor v. J. P. Stevens & Co.*, 300 N.C. 94, 104, 265 S.E. 2d 144, 150 (1980). Mixed questions of law and fact are fully reviewable on appeal. *Brown v. Charlotte-Mecklenburg Board of Education*, 269 N.C. 667, 153 S.E. 2d 335 (1967). Findings of fact made by the Commission are conclusive on appeal when supported by competent evidence, even when there is a conflict in the evidence; however, an exception to a finding of fact not supported by competent evidence must be sustained. *Morse v. Curtis*, 276 N.C. 371, 172 S.E. 2d 495 (1970).

In *Wood*, this Court set out the approach to be followed by the Commission in determining whether a particular illness falls within the definition provided by G.S. 97-53(13):

> The Commission must determine first the nature of the disease from which the plaintiff is suffering—that is, its characteristics, symptoms and manifestations. Ordinarily, such findings will be based on expert medical testimony. Having made appropriate findings of fact, the next question the Commission must answer is whether or not the illness plaintiff has contracted falls within the definition set out in the statute. This latter judgment requires a conclusion of law.

297 N.C. at 640, 256 S.E. 2d at 695-96. Of particular importance to the instant case, this Court added the following statement:

> [W]hile the construction of a statute is ultimately a question of law for the courts, expert opinion testimony as to the meaning of technical terms used in a statute is clearly competent. (Citations omitted.) "Expert testimony may be received as an aid to proper interpretation if the statute or rule (a)

used technical terms not generally understood . . . ; or (b) is ambiguous or indefinite." *Hillman v. Northern Wasco County People's Utility District*, 213 Or. 264, 297, 323 P. 2d 664, 680 (1958).

*Id.* at 642, 256 S.E. 2d at 696.

Applying the foregoing to the record before us, we first consider the extensive testimony of Dr. Kaye H. Kilburn, a recognized authority on the causes and characteristics of byssinosis. Indeed, Dr. Kilburn's testimony was so impressive to the Court of Appeals that the majority opinion quoted several pages of it. 56 N.C. App. at 295-301, 289 S.E. 2d at 63-66. Of primary importance to the question before us is the following pointed testimony elicited from Dr. Kilburn:

> I have been asked if I have an opinion on whether byssinosis is also an inflammation of the external contact surface. I think it truly has to be considered, as we have for many years in the study of lung disease, that *the entire respiratory surface of the lung is an external contact surface.* That is what all our air pollution legislation is based on. There is solid experimental and epidemiologic evidence that though we have something in the neighborhood of one-half to two square meters of body surface which is skin, we have in the neighborhood of 180 square meters or roughly the size of a tennis court of body surface, which is lung, and both are in the same intimate contact with the air which we walk around in and beathe [sic]. But one is 100 times as extensive as the other, so that plus the fact the lung is sort of one thin cell thick and the skin is many cells thick.
>
> So, in terms of being responsive to environmental materials, whether they be natural or manmade, *the lung is an external contact surface* which is responsive to this material, whatever it be, that we get in this mixture which we breathe and call air.

(Emphasis added.)

While apparently believing all other medical testimony presented, the Commission and the Court of Appeals disregarded the testimony quoted above as irrelevant to whether plaintiff's disease fell within the meaning of "external contact surfaces" as

used in G.S. 97-53(13) as it read on 5 January 1963. The Court of Appeals reasoned that the words, "external contact surface," were not technical and should therefore be construed in accordance with their common and ordinary meaning. The court then reasoned in essence that the word "external" indicated a legislative intent that only irritation or inflammation of external bodily organs was embraced by G.S. 97-53(13). In other words, the Court of Appeals interpreted "external" as modifying "surfaces." Rejecting plaintiff's contention and evidence that the respiratory surfaces of the lungs should be considered as "external contact surfaces" as contemplated by the statute, the Court of Appeals concluded,

> Despite Dr. Kilburn's stimulating and enlightened testimony, we reject plaintiff's argument that Dr. Kilburn's present opinion, based upon the impressive research carried out by him and other experts in the study of byssinosis during the past ten to fifteen years, should be engrafted upon the legislative intent as that intent was manifested when the statute in question was enacted.

56 N.C. App. at 302, 289 S.E. 2d at 66.

The Court of Appeals first erred in considering the term "external contact surfaces" as an ordinary and non-technical one. Clearly, such a phrase, when employed in the context of defining parts of the human anatomy, is technical in nature and its meaning can be ascertained only by reference to expert medical testimony. While such words have a meaning generally understood in ordinary usage, we believe the use of those words in a statute defining compensable occupational diseases clearly calls for the aid of medical experts in deciding which parts of the human anatomy fall within that term. Expert medical testimony was essential for the proper interpretation of "external contact surfaces" and Dr. Kilburn's testimony was particularly important because it was uncontroverted even by lay testimony. Under these circumstances, neither the Commission nor the Court of Appeals is free to interpret such technically used terms as it chooses.

Additionally, the Court of Appeals and the Industrial Commission erred in interpreting "external" as modifying "surfaces." When the phrase "external contact surfaces" is interpreted as it

was by the Court of Appeals to refer to external parts of the body, the word "contact" has no meaning whatsoever. When the word "external" is read as modifying "contact," the term clearly refers to a surface of the body which is in contact with the outer or external environment. Such a reading gives due regard to each word used by the Legislature and more fully accomplishes compensation for damage done by "oils, cutting compounds, chemical dust, liquids, fumes, gases, or vapors and any other materials or substances." By its list of irritants we think the Legislature evinced a clear intent that the respiratory surfaces of the lungs be considered "external contact surfaces."

We hold, therefore, that the Court of Appeals erred in affirming the finding and conclusion of the Commission that the respiratory surfaces of the lungs are not external contact surfaces of the body as contemplated by G.S. 97-53(13) as it existed in January of 1963. There is no competent evidence in the record to support such a finding of fact and, consequently, there is no competent finding of fact to support such a conclusion of law. In so holding, we do not quarrel with defendant's contention that it is well established in this jurisdiction that the Commission may accept or reject the testimony of a witness, either in whole or in part, depending solely upon whether it believes or disbelieves the witness. Here, it is crystal clear that neither the Commission nor the Court of Appeals chose to disbelieve Dr. Kilburn. Indeed, each relied extensively on his testimony. The error of each was in assuming that the key words, "external contact surface," had no medical meaning or significance and that Dr. Kilburn's testimony should therefore be ignored, leaving the findings and conclusions devoid of *any* competent evidence in the record. Additionally, that the air surrounding us, and any impurities it may contain, is in constant contact with the respiratory surfaces of the lung is an established medical fact which is beyond dispute. Under our interpretation of "external contact surfaces" the respiratory surfaces of the lung are included in the coverage of the statute.

Nor do we find, as argued by defendant, that our holding here is inconsistent with our holding in *Taylor v. J. P. Stevens & Company*, 300 N.C. 94, 265 S.E. 2d 144. There, we referred to the lungs as "internal organs." Clearly, lungs are internal organs, but the terms "internal organs" and "external contact surfaces" are not mutually exclusive terms, as understood by the medical pro-

fession and as evidenced by Dr. Kilburn's testimony. Here, Dr. Kilburn's uncontroverted testimony showed that byssinosis is an irritation or inflammation of the respiratory surfaces of the lungs, which themselves are internal organs, and that the respiratory surface of the lungs is an "external contact surface" as that term was used in the version of G.S. 97-53(13) in effect at the time plaintiff in this case became disabled.

In light of our holding, it is unnecessary for us to reach the second question addressed by the Court of Appeals, whether the effect of Chapter 1305 of the 1979 Session Laws is to allow coverage for employees last injuriously exposed and disabled from byssinosis prior to 1 July 1963 even if compensation would not otherwise be payable under the Workers' Compensation Act. We express no opinion on the court's treatment of this issue.

In summary, we hold that the Commission and the Court of Appeals erred in finding as fact and concluding as law that the respiratory surfaces of the lungs are not "external contact surfaces" of the body within the meaning of the version of G.S. 97-53(13) in effect at the time plaintiff became disabled, 5 January 1963. Accordingly, the decision of the Court of Appeals is reversed. The case is remanded to that court with instructions to remand to the Industrial Commission for entry of an order compensating plaintiff for his disability resulting from byssinosis.

Reversed and remanded.