WALTER T. HIGGS, Plaintiff-Employee v. SOUTHEASTERN CLEANING SERVICE, Employer, and CNA INSURANCE COMPANY, Carrier, Defendants

No. COA95-919

(Filed 21 May 1996)

**Workers' Compensation § 209 (NCI4th)— tuberculosis not occupational disease—no correlation between janitorial work and disease**

The evidence was insufficient to meet the requirements for recovery for an occupational disease under N.C.G.S. § 97-53(13) where plaintiff's evidence failed to show any correlation between his work as a janitor and the development of tuberculosis, with the exception of his exposure to an employee with the disease; plaintiff would have been exposed to the disease of tuberculosis whether he was a janitor or a worker in some other capacity; and plaintiff's treating physician testified that there was nothing about the nature of a janitorial job in a department store which would increase a person's risk of developing tuberculosis.

**Am Jur 2d, Workers' Compensation§ 329.**

**HIGGS v. SOUTHEASTERN CLEANING SERVICE**

[122 N.C. App. 456 (1996)]

Appeal by defendants from Opinion and Award entered 26 May 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 April 1996.

*Monroe, Wyne and Lennon, P.A., by George W. Lennon, for plaintiff-appellee.*

*Robinson Maready Lawing & Comerford, L.L.P., by Jane C. Jackson and Jolinda J. Steinbacher, for defendants-appellants.*

JOHNSON, Judge.

Plaintiff Walter T. Higgs brought this action to recover benefits for the alleged occupational disease of tuberculosis after defendant Southeastern Cleaning Service (hereinafter "Southeastern") and its workers' compensation insurance carrier, defendant CNA Insurance Company (hereinafter "CNA"), denied plaintiff's claim. Plaintiff claimed that he contracted tuberculosis while employed as a janitor for defendant Southeastern. Defendants, however, denied plaintiff's claim because they were of the opinion that tuberculosis was not characteristic of and peculiar to the nature of plaintiff's job as a janitor.

The evidence tends to show that plaintiff began working for defendant Southeastern in the Hudson-Belk Department Store at Crabtree Valley Mall, in Raleigh, North Carolina in 1991. Plaintiff worked three hours each morning from approximately 6:30 a.m. to 9:30 a.m. spot-mopping floors. The Belk store consisted of three floors of open space, but on occasion plaintiff did have opportunity to interact with other Southeastern employees while working at the Belk store.

At the same time that plaintiff was employed by defendant Southeastern, he was also working eight hours per night for Sun State Cleaning Services, where he was assigned to clean Roche Bio Medical Laboratories. Roche Bio Medical is in the business of testing various body fluids for diseases. While plaintiff was cleaning Roche's facilities, he often saw test tubes containing samples of various body fluids to be tested.

In the summer of 1992, plaintiff and other Southeastern employees who had worked the early morning shift at Belk were told by a Southeastern supervisor that a former employee, with whom plaintiff had worked closely, had tested positive for tuberculosis. Each worker

was urged to be tested for the disease at the county health department. As a result, plaintiff went to the Wake County Health Department in July 1992 to undergo a skin test and chest x-ray. The skin test and chest x-ray were negative for any signs of tuberculosis. During the fall of 1992, however, plaintiff began to have increasing problems with shortness of breath. In late November or early December of 1992, an x-ray disclosed a lesion on plaintiff's left lung. Plaintiff advised his supervisor of this problem. Thereafter, plaintiff was referred to the surgery clinic at Wake Medical Center in Raleigh, where he was treated by Dr. William Sullivan and Dr. Pascal Udekwu. Subsequent surgery on 28 January 1993, during which forty (40) percent of plaintiff's left lung was removed, revealed that plaintiff was suffering from tuberculosis.

Notably, in December 1992, defendant Southeastern's contract with Belk had ended, but plaintiff chose to work for the new Belk cleaning contractor, D & D's Cleaning Services. Thus, defendant was no longer employed with defendant Southeastern after December 1992.

After surgery, plaintiff returned to work for D & D's Cleaning Services at Belk and for Sun State Cleaning Services at Roche Bio Medical on or about 1 May 1993. Thereafter, plaintiff has not missed any time from work due to tuberculosis. Plaintiff reached maximum medical improvement by 24 May 1993, but as late as October 1993, plaintiff was still complaining of palpitations and fatigue.

This matter came on for hearing before Deputy Commissioner Tamara R. Nance on 4 January 1994 in Raleigh. After hearing lay testimony, and reviewing the transcript of Dr. Udekwu's expert testimony, documents stipulated into evidence, and plaintiff's medical records, Deputy Commissioner Nance entered an Opinion and Award on 13 June 1994, denying plaintiff's claim for benefits. Deputy Commissioner Nance concluded that plaintiff failed to meet his burden of proving the elements of an occupational disease claim and that plaintiff's employment as a janitor did not increase his risk of contracting tuberculosis. Plaintiff appealed to the Full Commission.

On 26 May 1995, the majority of the Full Commission filed an Opinion and Award, reversing the deputy commissioner's decision, and awarding plaintiff certain workers' compensation benefits. Commissioner Thomas J. Bolch dissented. Defendants now appeal.

Defendant first argues on appeal that the Industrial Commission erred in failing to apply clear statutory language and follow established case precedents requiring plaintiff to prove the elements of an occupational disease claim. We agree.

On appellate review in workers' compensation cases, our Court's inquiry is limited to whether there is any competent evidence to support the Industrial Commission's findings of fact and whether the Commission's findings support its conclusions of law. *Watkins v. City of Asheville*, 99 N.C. App. 302, 303, 392 S.E.2d 754, 756, *disc. review denied*, 327 N.C. 488, 397 S.E.2d 238 (1990) (quoting *Dolbow v. Holland Industrial*, 64 N.C. App. 695, 696, 308 S.E.2d 335, 336 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 651 (1984)). If the evidence tends to support the findings of the Commission, these findings are binding on appeal, although there may be some evidence to support findings to the contrary. *Mayo v. City of Washington*, 51 N.C. App. 402, 406-07, 276 S.E.2d 747, 750 (1981) (quoting *Click v. Freight Carriers*, 300 N.C. 164, 166, 265 S.E.2d 389, 390-91 (1980)). A finding of fact which is a mixed question of fact and law is not binding on appeal. *Taylor v. Cone Mills*, 306 N.C. 314, 320, 293 S.E.2d 189, 193 (1982). In *Taylor*, our Supreme Court held that the determination of whether an illness falls within the statutory definition of an occupational disease is such a mixed question, and hence, is fully reviewable on appeal. *Id.*

The disease of tuberculosis is not listed as an occupational disease in section 97-53 of the North Carolina General Statutes. Plaintiff must, then, meet the requirements of the more general portion of the workers' compensation statute which defines an occupational disease thusly:

Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

N.C. Gen. Stat. § 97-53(13) (1991). Our Supreme Court in *Booker v. Medical Center* and *Rutledge v. Tultex Kings Yarn* discussed the requisite elements of an occupational disease claim. They are as follows:

(1)    The disease is "characteristic of and peculiar to a particular trade or profession";

(2)    The disease is not an ordinary disease to which the general public is equally exposed; and

(3)    Exposure to a hazard in employment contributed to, or was a significant causal factor, in the development of the disease.

*Booker,* 297 N.C. 458, 472-475, 256 S.E.2d 189, 198-200 (1979); *see Rutledge,* 308 N.C. 85, 301 S.E.2d 359 (1983). The plaintiff bears the burden of proving each and every element of the claim under section 97-53(13). *Moore v. Stevens & Co.,* 47 N.C. App. 744, 269 S.E.2d 159, *disc. review denied,* 301 N.C. 401, 274 S.E.2d 226 (1980).

In the instant case, taking the evidence in the light most favorable to the plaintiff, the facts tend to show that plaintiff worked alongside a co-worker who was diagnosed with tuberculosis. At all times relevant, plaintiff cannot remember coming into contact with anyone else who has been diagnosed with tuberculosis. Plaintiff was tested for tuberculosis in July 1992 and those tests were negative. In the later part of 1992, however, a lesion was found on plaintiff's left lung, and subsequent surgery revealed that plaintiff had tuberculosis.

A sole expert witness, Dr. Udekwu, who was plaintiff's diagnosing physician, was deposed and testified that tuberculosis can no longer be characterized as an ordinary disease of life. He also noted that it is more likely that a person would contract the disease through close contact—such as a close working or family relationship—than from casual, infrequent contact. While Dr. Udekwu admitted that he did not know for a certainty where plaintiff contracted tuberculosis, he opined that if the co-worker was the only person with tuberculosis that plaintiff had come into close contact with, that exposure would indeed be the "but for" cause of plaintiff's contracting the disease.

As a result of plaintiff's contracting tuberculosis, forty percent (40%) of his left lung was removed during a January 1993 surgery—described by Dr. Udekwu as "a major operation." While plaintiff was noted to have reached maximum medical improvement on 24 May 1993, plaintiff still suffered from palpitations and fatigue as of October 1993.

In the light most favorable to the plaintiff, however, the evidence fails to show that plaintiff suffers from an occupational disease.

## HIGGS v. SOUTHEASTERN CLEANING SERVICE

[122 N.C. App. 456 (1996)]

North Carolina case law mandates such a conclusion. In *Booker v. Medical Center*, Mr. Booker was employed as a laboratory technician at Duke Medical Center. Each day, he performed various chemical analyses of blood and other bodily fluids, in the process, often spilling blood onto his hands. *Booker*, 297 N.C. at 461, 256 S.E.2d at 192. Some of the samples tested by Mr. Booker were infected with serum of hepatitis—an infectious viral disease which is transmitted when the blood of one infected with the disease enters the blood of another, usually through cuts or scratches on the skin. *Id.* at 462, 256 S.E.2d at 192. After working at the Medical Center for approximately five years, Mr. Booker was diagnosed as suffering from serum hepatitis and subsequently died from the disease. *Id.* Mr. Booker's widow and minor children filed for death benefits under the Workers' Compensation Act. *Booker*, 297 N.C. 458, 256 S.E.2d 189.

Our Supreme Court held that Mr. Booker's death was noncompensable. The Court particularly noted,

> The requirement that the disease be "characteristic of or peculiar to" the occupation of the claimant precludes coverage of diseases contracted merely because the employee was on the job. For example, it is clear that the Law was not intended to extend to an employee in a shoe factory who contracts pneumonia simply by standing next to an infected co-worker. In that example, the employee's exposure to the disease would have occurred regardless of the nature of the occupation in which he was employed. To be within the purview of the Law, the disease must be so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted.

*Id.* at 473-74, 256 S.E.2d at 199 (quoting *Russell v. Camden Community Hospital*, 359 A.2d 607, 611-12 (Me. 1976) (addressing a nurse's aid contracting tuberculosis from a patient)). *See Morrow v. Hospital*, 21 N.C. App. 299, 204 S.E.2d 543 (1974); *Smith v. Hospital*, 21 N.C. App. 380, 204 S.E.2d 546 (1974).

In the instant case, plaintiff's evidence fails to show any correlation between his work as a janitor and the development of tuberculosis, with the exception of his exposure to an employee with the disease. Plaintiff would have been exposed to the disease of tuberculosis whether he was a janitor or a worker in some other capacity. In fact, plaintiff's treating physician, Dr. Udekwu, himself testified that there was nothing about the nature of a janitorial job in a department store

which would increase a person's risk of developing tuberculosis. North Carolina case law mandates that the evidence, as presented, is insufficient to meet the requirements for recovery for an occupational disease under section 97-53(13) of the General Statutes. Plaintiff's arguments to the contrary, unfortunately, must fail.

As the evidence in the light most favorable to plaintiff failed to make a showing of the presence of an occupational disease, we need not address defendants' other argument on appeal at this juncture.

In light of the foregoing, the Commission's decision must be reversed.

Reversed.

Judges WYNN and WALKER concur.