I respectfully dissent from the majority's decision to reverse the Deputy Commissioner's Opinion and Award in the instant matter. In the opinion of the undersigned, the Deputy Commissioner correctly analyzed the competent evidence in this case, applied the appropriate law and came to the conclusion mandated by the evidence.
Whether a given disease or condition falls within the general definition set out in N.C. Gen. Stat. § 97-53(13) presents a mixed question of fact and law. Taylor v. J.P. Stevens Co., 300 N.C. 94, 265 S.E.2d 144 (1980); Taylor v. ConeMills Corp., 306 N.C. 314, 293 S.E.2d 189 (1982). The majority never identifies a medically defined occupational disease that plaintiff has contracted, but simply states that she "suffered from disabling right hand pain and right extremity pain." See Finding of Fact No. 18. Furthermore, the majority gives "great weight to the opinions of Drs. Glen Subin and Jarjour concerning plaintiff's occupational disease."See Finding of Fact No. 20. However, neither of these physicians were able to diagnose an occupational disease either, as set forth infra.
To prove the existence of a compensable "occupational disease" the disease (1) must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation, i.e., proof of a causal connection between the disease and the employment. Hansel v.Sherman Textiles, 304 N.C. 44, 283 S.E.2d 226 (1981). Dr. Subin was not able to diagnose any disease or medically defined condition in plaintiff beyond hand and arm pain. Further, he noted that it would be speculation on his part to relate her employment position to her complaints. Deposition of Dr. Subin at 25 (hereafter Subin Dep. at __). Dr. Dameron, another physician who examined plaintiff, had the impression that plaintiff's dermatovascular condition was of the "auto-immune type," stating that "this is not the type of pathology we have seen to result from repetitious use of an instrument such as the air gun." Stip. Ex. at 130. With regard to the second physician whose testimony the majority gives great weight, Dr. Jarjour changed his initial tentative diagnosis of scleroderma — a disease that has been occupationally related to continual use of vibratory instruments — to probable reflex sympathetic dystrophy (RSD) — which has not. Stip. Ex. at 123, Subin Dep. at 13. Dr. Jarjour did not testify or otherwise make any of the required showings of proof necessary for compensation under N.C. Gen. Stat. § 97-53(13). Dr. Erdoes also believed that plaintiff exhibited RSD. He testified that RSD "usually follows some type of trauma". (Deposition of Dr. Erdoes at 21) He could not say to a reasonable degree of medical certainty that plaintiff's work-exposure caused or put her at increased risk of developing RSD. Id. at 19, 20.
In light of the above, the undersigned fails to find any evidence for the majority's conclusion that plaintiff has met the her burden by the greater weight of the evidence that her "undiagnosed" hand and arm pain [or RSD] was a cause and condition peculiar to her particular employment and was not an ordinary disease of life to which the general public, not so employed, is equally exposed. N.C. Gen. Stat. § 97-53(13).
This ___ day of May.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
DCS/jlr