The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant.
3. Aetna Casualty Surety Co. was the carrier on the risk for defendant.
4. The following documents were stipulated into evidence:
 a. One-page radiology report from Carolinas Medical Center dated March 22, 1994.
 b. Thirty-eight (38) pages of medical records from Dr. Roy A. Agner, Jr., some of which are printed on both sides.
 c. Sixteen (16) pages of medical records, Concord Medical Services — Douglas G. Kelling, Jr., M.D.
 d. Twenty-five (25) pages of Social Security Disability file of plaintiff.
 e. Four-page Social Security Earnings Records of plaintiff.
 f. The parties stipulated to fifteen (15) pages of Starr Davis documents, but plaintiff objected to the relevance of such documents.
5. The medical records of Dr. Edward E. Landis, Jr., Dr. Douglas G. Kelling, Jr., Dr. Eric D. Alpert, Dr. George T. Rosser, Dr. David E. Wehrung and Dr. Ray A. Agner, Jr., and records of plaintiff's medical providers were stipulated into evidence.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant from March 10, 1975 as an insulator until July 1, 1991 when he retired. During the last full year of his employment, the plaintiff earned $31,530.89 in wages from the defendant.
2. Although plaintiff had some exposure to asbestos prior to going to work for Starr Davis, the 16 years at Starr Davis as an insulator was where he was last injuriously exposed to asbestos.
3. Plaintiff worked directly installing asbestos insulation, removed asbestos products, tied into asbestos products and was around asbestos products. His worked required him to be around loose asbestos fibers with no protective clothing or mask. It is a reasonable inference from the evidence that he worked around and with loose asbestos fibers and ingested asbestos fibers into his lungs.
4. Plaintiff worked at the Federal Paper Board Company job in 1975 for Starr Davis in Riegelwood, NC, for approximately 22 weeks and his job was insulating with non-asbestos insulation. However, he was tying into old asbestos containing lines. He would saw off the old asbestos insulation and clean up the mess made by the pipe fitters in order to tie in and insulate the new pipes. The old asbestos insulation would be dropped on the floor, creating dust containing loose asbestos fibers. He swept old asbestos insulation off the floor and spent most of his time on that job in the boiler room where there was especially heavy asbestos exposure.
5. In 1976, plaintiff worked for close to half a year on the Allied Chemical Plant job for Starr Davis in Moncure, NC. For at least half of the 22 weeks that plaintiff worked on this job, he was exposed to and inhaled loose asbestos fibers while he was cutting and installing asbestos insulation
6. Plaintiff worked at the Biltmore Chemical Plant job for Starr Davis in Asheville, NC, for approximately six weeks. This job required him to tie into existing asbestos lines. To do this, he had to cut off the old asbestos to square up the lines, creating a cloud of dust containing loose asbestos fibers while he was doing this. He would also have had to remove asbestos insulation in order to put the new insulation on the lines. He used a hammer to knock the old asbestos off the 90-degree turns on the pipes, again introducing asbestos fibers into the air he breathed.
7. In 1984 or 1985, plaintiff worked for about six weeks at the Cliffside power plant job for Starr Davis. His job required him to tie into the old asbestos covered lines.
8. In approximately 1987, plaintiff worked for approximately six weeks at the R. J. Reynolds Plant job for Starr Davis in Advance, NC. He had to take asbestos insulation off the old lines and reinsulate with non-asbestos insulation. He also had to tie into existing lines that contained asbestos. In performing this job he removed old asbestos insulation and dropped it to the floor where it burst into powder, which he would then have to sweep.
9. Also in 1987, plaintiff worked at the Langley School job for Starr Davis in Asheboro for about three months. That required him to work on a header that contained asbestos insulation. He cut off the asbestos insulation in order to install the new insulation.
10. In 1988, plaintiff worked at the Duke Power Operations Center job for Starr Davis for four or five weeks in Charlotte. Another company had a contract to remove the asbestos before plaintiff arrived on the site. Plaintiff and his coworkers were to install new non-asbestos insulation. However, the company that had done the prior tear out had done a poor job and remnants of the asbestos insulation was hanging on the pipes throughout the area of that job
11. Plaintiff's job with Starr Davis also required him to work in many old plants to insulate pipes with other products. Most of these old plants had asbestos-containing materials in them. The insulation would often be "mashed up and powdery, . . . broken up."
12. Mr. Watson and Mr. Seagraves, plaintiff's coworkers, also testified about several of the above-mentioned work sites and confirmed plaintiff's testimony. They specifically remembered using asbestos containing products at the Moncure facility and also testified that the tie-in work and insulation work that they had to do throughout their years with Starr Davis would bring them in constant contact with old asbestos containing insulation. Such work would require them to be around and breathe asbestos dust.
13. On August 17, 1993, after plaintiff had left employment at Starr Davis, Dr. Douglas G. Kelling, Jr., provided a pulmonary evaluation of plaintiff. At that time, Dr. Kelling determined that plaintiff had "asbestos-related pleural disease without evidence of asbestosis."
14. On March 21, 1994, a CT scan was performed on plaintiff at Carolinas Medical Center. That CT scan was interpreted by Dr. Eric D. Alpert of Charlotte Radiology. Dr. Alpert's interpretation of the CT scan was as follows. "Multiple small areas of focal pleural thickening, several with secondary calcification. Evidence of mild basilar interstitial disease, especially some thickening of the interlobular septae. The combination of pleural changes with interstitial fibrosis is suggestive of asbestosis, although the findings are not specific and may be seen with other causes of interstitial fibrosis."
15. On April 26, 1994, Dr. Kelling, a member of the North Carolina Advisory Medical Panel, wrote a letter stating as follows: "Based upon the findings on the CT scan of the chest performed at Carolinas Medical Center on March 21, 1994, I feel that plaintiff does have both asbestosis and asbestos-related pleural disease."
16. Plaintiff's family physician is Dr. Roy A. Agner, Jr. In Dr. Agner's notes, there is a March 16, 1993, CT scan of Plaintiff's chest that indicates "abnormalities seen on chest x-ray is actually due to small calcified pleural plaques. Other small pleural plaques containing calcifications seen in left and right hemithorax. Primary differential diagnosis is asbestos exposure. Other possibilities include possible trauma or infection, although the presence of plaques bilaterally makes these possibilities less likely." In Dr. Agner's January 17, 1994, office note, he provides a number of diagnoses, including a specific diagnosis of "asbestosis".
17. While working for defendant, plaintiff was exposed to the hazards of asbestos for more than thirty working days over seven consecutive months during the period from March 10, 1975 through July 1, 1991.
18. Plaintiff was last injuriously exposed to the hazards of asbestos while employed by defendant on the Starr Davis job at the Duke Power Operations Center in Charlotte, NC, in 1988.
19. Plaintiff was not diagnosed with asbestosis until after his retirement from defendant. He timely notified defendant of his occupational disease of asbestosis by filing a Form 18B on or about 13 April 1994. Plaintiff did not receive a definitive diagnosis of asbestosis until Dr. Roy A. Agner, Jr.'s diagnosis of 17 January 1994. The claim was filed within two years of the time he was advised by competent medical authority that he had asbestosis.
20. Plaintiff's exposure to asbestos in his employment placed him at an increased risk for contracting asbestosis over the general public not so exposed. Plaintiff has asbestosis, which is a characteristic fibrotic condition of the lungs caused by the inhalation of asbestos fibers.
21. Upon his diagnosis of asbestosis, the plaintiff became "disabled" for the purposes of compensation benefits payable under the provisions of N.C. Gen. Stat. § 97-61.5(b) and thereby he automatically became entitled to 104 weeks of compensation provided by the same statute, which payments are not only designed to encourage employees to remove themselves from further harmful exposure to asbestos, which plaintiff had already done on his own when he left the defendant's employment in 1991, and to provide for their rehabilitation, but also to compensate them because of the incurable nature of the disease. Roberts v. SoutheasternMagnesium and Asbestos Co. 61 N.C. App. 706, 301 S.E.2d 742
(1983).
22. When his asbestosis was diagnosed on 17 January 1994 by Dr. Agner and on 26 April 1996 by Dr. Kelling and when plaintiff thus became "disabled" for the purposes of the 104 weeks of compensation pursuant to the provisions of N.C. Gen. Stat. § 97-61.5(b), the plaintiff was not employed; but rather, he had already been disabled by unrelated multiple sclerosis that forced him to retire from the defendant on 1 July 1991, and he has remained disabled to the present.
23. The last full year the plaintiff worked for the defendant, he received compensation of $31,530.89, which provides an average weekly wage of $606.36 and a compensation rate of $404.24. This most nearly approximates the average weekly wage he would have been earning at the time of his disablement from asbestosis and is not only the appropriate average weekly wage to use in determining his entitlement to compensation benefits for the reasons more fully hereinafter described, but is the fairest method to both the employer and employee in computing his average weekly wage.
24. Read in conjunction with each other, N.C. Gen. Stat. § 97-2(5) and N.C. Gen. Stat. § 97-52 provide that the appropriate average weekly wage should be based on the earnings of the injured employee at the time of his or her injury and, in occupational disease claims, the resulting disablement therefrom should be treated as injury by accident for the purpose of the compensation benefits due under the Workers' Compensation Act, which is consistent with the modern approach of focusing on the time of the manifestation of the condition rather than exposure when approaching limitations in cases involving occupational diseases. (See Mergenthaler v. Asbestos Corp. of America, 534 A.2d 272
(1987)). Such an approach takes into consideration the many year latency period before asbestosis and a number of other occupational diseases manifest themselves and provides compensation benefits based on when the breakdown actually occurs rather than the last injurious exposure many years before.
25. Defendant employer was not a designated "dusty trade" pursuant to any prior order of the Commission under N.C. Gen. Stat. § 97-60. The Act was not intended to bar workers' compensation benefits where the worker's employer has not been designated a "dusty trade". No statutory provision prohibits an award of compensation to a plaintiff whose employment has not been designated a "dusty trade". The employment in this case clearly exposed the employees to substantial amounts of asbestos, but this exposure was not reported to the Commission in order for the Commission to declare the employment a "dusty trade".
26. Defendant employer required the plaintiff to install asbestos insulation in 1976 in violation of the then current OSHA standards. Throughout the plaintiff's work history, the defendant failed to provide the plaintiff with masks or any sort of respiratory protection and failed to provide the plaintiff with a safe work environment in violation of the North Carolina OSHA standards.
27. Defendant employer had knowledge of the plaintiff's exposure to asbestos and had knowledge of the plaintiffs medical history, indicating a diagnosis of asbestosis prior to the hearing in this matter. The only live testimony provided by the defendant in this matter was the testimony of Jessie Thomas Hunter who did not dispute the history of asbestos exposure as testified to by the plaintiff and his coworkers. The defendant vigorously defended this claim in light of the uncontroverted evidence of the plaintiff's exposure to asbestos and the diagnosis of asbestosis. No reasonable grounds exist upon which this case was defended.
***********
Based upon the foregoing Findings of Fact and stipulations, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff, while employed by the defendant, was exposed to asbestos dust as much as thirty (30) working days or parts thereof within seven consecutive months. N.C. Gen. Stat. § 97-57.
2. As a result of his exposure to the hazards of asbestos dust (fibers) during his period of employment by the defendant employer from March 10, 1975 to July 1, 1991, the plaintiff has contracted the occupational disease asbestosis. He was last injuriously exposed to the hazards of asbestos during the same period of employment. N.C. Gen. Stat. § 97-53(25), N.C. Gen. Stat. § 97-58, N.C. Gen. Stat. § 97-57, N.C. Gen. Stat. § 97-63.
3. As a result of his contraction of asbestosis, plaintiff is entitled to receive weekly compensation at the rate of $404.24 per week for a period of 104 weeks commencing as of 17 January 1994. N.C. Gen. Stat. § 97-61.5.
4. For the reasons described in the above findings of facts, the average weekly wage of the plaintiff should be determined based upon his last employment at the time of his disablement from the involved occupational disease, rather than his earnings at the time of his last injurious exposure. N.C. Gen. Stat. § 97-2(5), N.C. Gen. Stat. § 97-52, Tulor v. ConeMills, 306 N.C. 314, 293 S.E.2d 189 (1982), Wood v. J. P.Stevens 297 N.C. 636, 256 S.E.2d 692 (1979).
5. The defendant carrier Aetna Casualty and Surety Co. was on the risk at the time of plaintiff's last injurious exposure and is, therefore, liable for payment of compensation due plaintiff pursuant to the Act. N.C. Gen. Stat. § 97-57.
6. Plaintiff is entitled to receive medical compensation as a result of his contraction of asbestosis, including future medical monitoring for medication and other medical needs. N.C. Gen. Stat. § 97-59.
7. Plaintiff is entitled to receive additional examinations from the advisory medical committee as a result of his contraction of an occupational disease, asbestosis. N.C. Gen. Stat. § 97-61.3; N.C. Gen. Stat. § 97-61.4.
8. Defendant employer willfully failed to comply with statutory requirements and plaintiff is entitled to a ten per cent (10%) penalty. N.C. Gen. Stat. § 97-12(3).
9. This case was defended by the defendants without reasonable grounds and the plaintiff is entitled to an award of attorney's fees payable by the defendant. N.C. Gen. Stat. § 9788.1.
***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fees hereinafter allowed, defendants shall pay to plaintiff 104 weeks of compensation at the rate of $404.24 per week. All of said compensation having accrued, the same shall be paid in a lump sum without commutation.
2. In addition to the compensation hereinabove awarded, the defendant shall pay a penalty of 10% of the awarded compensation.
3. In addition to the compensation hereinabove awarded in paragraphs 1 and 2, defendant shall pay to the plaintiff's attorney 25% of the total awarded compensation in paragraphs 1 and 2 as attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
4. A reasonable attorney fee in the amount of 25% of the compensation awarded under paragraphs 1 and 2 above, in addition to the award in Paragraph 3, is approved and allowed for plaintiffs counsel. Said amount shall be deducted from the compensation payable to the plaintiff and shall be paid directly to the plaintiff's attorney.
5. Defendants shall pay all medical expenses incurred by the plaintiff as a result of the occupational disease giving rise hereto when bills for the same have been submitted to the defendant carrier.
6. Defendants shall pay all costs.
This 15th day of June 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ BERNADINE S. BALLANCE COMMISSIONER